# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY H. G., <br><br> Plaintiff, <br><br> v. <br><br> SS DISABILITY, <br><br> Defendant. | Case No.: 3:19-cv-01603-CAB-RBM <br><br> **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE RE: PLAINTIFF'S MERITS BRIEF** <br><br> [Doc. 25] |

## I.  INTRODUCTION

Plaintiff Terry H. G. ("Plaintiff"), proceeding pro se and *in forma pauperis*, filed a Complaint under 42 U.S.C. § 405(g) of the Social Security Act ("the Act"). (Docs. 1, 6.) Plaintiff seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") final decision denying Plaintiff's application for disability and disability insurance benefits. *See* 42 U.S.C. § 405(g).

There are two briefs before the Court. The first is Plaintiff's Merits Brief ("Merits Brief" or "Motion") which the undersigned accepted *nunc pro tunc* to April 9, 2020.[1]

---

[1] Plaintiff's Merits Brief is a one-page document that does not contain a Memorandum of Points & Authorities ("MP&A"). This District's Civil Local Rules require an MP&A in support of any motion.

(Docs. 24-25.) The second is Defendant's Opposition to Plaintiff's Merits Brief ("Opposition Brief"). (Doc. 26.) On May 20, 2020, the undersigned issued an Order Extending Time for Plaintiff to File Reply Brief through June 29, 2020. (Doc. 29.) To date, Plaintiff has not filed a Reply Brief. Reply briefs are optional, thus, the matter is ready for ruling. *See* CivLR 7.1(e)(6)(e)(3).

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c). Considering the papers, the Administrative Record ("AR"),[2] the facts, and the applicable law, it is respectfully recommended that Plaintiff's Motion be **DENIED** and the decision of the Administrative Law Judge ("ALJ") be **AFFIRMED**.

## II. BACKGROUND & PROCEDURAL HISTORY

On September 24, 2015, Plaintiff protectively filed an application for disability and disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416, 423. (AR at 15, 168-174.) Plaintiff alleged disability began on November 29, 2011 from injuries sustained during a horseback riding accident. (*Id.* at 15, 18, 168-174.) The alleged disabling injuries include multiple rib fractures, lumbar transverse process fractures,[3] rib fractures, pulmonary contusion, diabetes mellitus, diabetic neuropathy, peripheral neuropathy, chronic pain, degenerative disc disease of the cervical spine with stenosis and radiculopathy, and status post-two right toe amputations due to osteomyelitis. (*Id.* at 18.)

---

*See* CivLR 7.1(f). Plaintiff is pro se, and thus, is relieved from strict application of procedural rules. *See Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013). On April 15, 2020, the undersigned issued a Discrepancy Order and accepted the Merits Brief for filing despite the lack of an MP&A to support the Merits Brief. (Doc. 24.) Plaintiff subsequently mailed an *ex parte* letter to the Clerk of Court inquiring about the April 15, 2020 Discrepancy Order, and he attached a "Request for Merits Brief." (Doc. 28.) The undersigned issued another Discrepancy Order accepting the "Request for Merits Brief" *nunc pro tunc* to May 7, 2020. (Docs. 27-28.) The April 9, 2020 Merits Brief and May 7, 2020 Request for Merits Brief are duplicative in nature, but the undersigned will refer to each filing as appropriate throughout this Order. (*Compare* Doc. 25 *with* Doc. 28.)

[2] All AR page citations refer to the number on the bottom right-hand corner of the page, rather than the numbers assigned by the CM/ECF system.

[3] "The transverse process is a projection from the vertebrae into which muscles are attached to operate the vertebrae and allow you to bend, twist, and turn." (AR at 37.)

The Social Security Administration denied Plaintiff's application initially and upon reconsideration. (AR at 15, 85-90, 92-97.) Next, Plaintiff requested a hearing before an ALJ. (*Id.* at 15, 100-101.) The ALJ held a hearing on March 14, 2018. (*Id.* at 15, 29-58.) At the hearing, the ALJ elicited testimony from medical expert Ronald E. Kendrick, M.D. ("Dr. Kendrick"), vocational expert Gretchen A. Bakkenson, as well as Plaintiff himself. (*Id.* at 15, 30-56.) At the hearing, Plaintiff was represented by attorney Veronica Williams. (*Id.* at 29.)

On September 5, 2018, the ALJ issued a written decision finding Plaintiff not disabled. (*Id.* at 15-21.) On June 24, 2019, after the Appeals Council denied review of the ALJ's decision, the decision became the final decision of the Commissioner under 42 U.S.C. § 405(h). (*Id.* at 1-6.)

## III.   SUMMARY OF ALJ'S FINDINGS

In the decision, the ALJ determined Plaintiff last met the insured status requirements of the Act on December 31, 2011. (AR at 17.) The ALJ then followed the five-step sequential evaluation process to determine Plaintiff's disability status. *See* 20 C.F.R. § 404.1520; (AR at 17-21).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 29, 2011 through the date last insured of December 31, 2011. (AR at 17.)

At step two, the ALJ found Plaintiff had the following medically-determinable impairments through the date last insured: status-post multiple fractures of the lumbar spine transverse processes, status-post multiple rib fractures, status-post pulmonary contusions, and diabetes mellitus. (*Id.*) But the ALJ concluded Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.* at 18.) After reviewing the objective medical evidence and other evidence of record, the ALJ determined Plaintiff "did not have an impairment or combination of impairments that significantly

limited [his] ability to perform basic work-related activities for 12 consecutive months[.]" (AR at 17.) Therefore, the ALJ determined Plaintiff did not have a "severe" impairment as defined in 20 C.F.R. § 404.1520(c), and thus, determined Plaintiff was not disabled under the Act. (AR at 17-21.)

Because the ALJ found Plaintiff did not suffer from a severe impairment at step two and was therefore not disabled, the ALJ did not analyze steps three, four, or five. *See* 20 C.F.R. § 404.1520(a)(4) (if the ALJ finds claimant not disabled at a step, the ALJ does not proceed to the next step in the sequential evaluation process).

In sum, the ALJ found Plaintiff was not disabled under the Act from the alleged onset date of November 29, 2011 through the date last insured of December 31, 2011. (*Id.* at 21.)

## IV. ISSUES IN DISPUTE

This Court's review is limited to two issues: (1) whether the ALJ's decision contains legal error based upon an alleged failure to review all medical evidence of record; and (2) whether the ALJ's decision is supported by substantial evidence.

## V. STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. § 405(g). "[F]ederal court review of social security determinations is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation omitted). In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the

Commissioner's conclusion . . . ." *Lingenfelter*, 504 F.3d at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *E.g.*, *Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). When evidence supports more than one rational interpretation, the ALJ's conclusion must be upheld. *E.g.*, *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Stated differently, when "the evidence can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]." *Garrison*, 759 F.3d at 1010 (internal citation omitted). Rather, the Court only reviews the reasons provided by the ALJ and may not affirm the ALJ on other grounds. *Id.* (internal citation omitted).

## VI.   DISCUSSION

Liberally construing Plaintiff's Motion, Plaintiff's sole allegation of error focuses on his former attorney's failure to supplement "missing" medical records to the ALJ as requested, resulting in an erroneous denial of disability benefits. (Docs. 25, 28.) Defendant counters that Plaintiff failed to identify any medical evidence supporting his claim of disability as of his date last insured, and Plaintiff overall failed to meet his burden in establishing any error in the ALJ's decision. (Doc. 26 at 7-9.) Additionally, Defendant contends the ALJ's decision should be affirmed because it is supported by substantial evidence including the objective medical evidence, Plaintiff's hearing testimony, and Dr. Kendrick's medical opinion. (*Id.* at 9-15.)

Analyzing the parties' arguments and the ALJ's decision, the undersigned respectfully recommends the ALJ's decision be **AFFIRMED**.

### A.   The Court Can Proceed on the Current Record

Plaintiff raises a threshold issue: the completeness of the medical records the ALJ reviewed in making his disability determination. For the reasons outlined below, the undersigned finds the Court may proceed without the medical records at issue as these records do not preclude effective judicial review of the ALJ's decision.

The term "disability" under the Act means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *See* 42 U.S.C. § 423(d). A threshold issue in a disability determination involves examining the relevant time period of the alleged onset of disability and plaintiff's date last insured. Not only is it plaintiff's burden to prove disability, but plaintiff also has the burden of proving he was "either permanently disabled or subject to a condition which became so severe as to disable him *prior to the date upon which his disability insured status expired.*" *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (emphasis added) (internal citation and quotations omitted); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th. Cir. 2005). Additionally, plaintiff bears the burden of proof at step two to show that an impairment qualifies as "severe." *Bowen v. Yuckert*, 482 U.S. 137, 146-152 (1987) (citing 20 C.F.R. § 404.1520(c)).

At the same time, however, the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotations and citation omitted). This duty extends to those claimants represented by counsel and those appearing pro se. *Id.* (internal quotations and citation omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (internal quotations and citation omitted). The ALJ may discharge this duty by keeping the record open after the hearing to allow for supplementation of the record. *Id.* (internal citations omitted).

In the context of an incomplete record with the federal court, a Social Security matter should be remanded if effective judicial review is impossible. *See generally Cutler v. Washington*, 516 F.2d 1282, 1285 (2d Cir. 1975) (stating "[w]here medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material has been held to warrant a remand for clarification and supplementation.") (internal citation omitted).

However, if an incomplete record does not preclude effective judicial review, then the court may proceed without them. *Varney v. Sec. Health & Human Servs.*, 846 F.2d 581, 583 (9th Cir. 1988) (declining to remand on ground that portions of administrative hearing transcript deemed inaudible because the gaps in testimony did not interfere with comprehension of testimony to an extent that would hinder fair review) *superseded on other grounds, Bunnell v. Sullivan*, 912 F.2d 1149, 1154 (9th Cir. 1990); *see also Andres v. Bowen*, 870 F.2d 453, 455-456 (8th Cir. 1989) (affirming order upholding denial of benefits despite incomplete hearing transcript because there was no indication that the missing transcript would aid the claimant or that its absence prevented a fair judicial review).

Here, the parties do not dispute the date Plaintiff's insurance coverage lapsed or the relevant time period for purposes of assessing Plaintiff's disability status. The issue is whether Plaintiff suffered a disability prior to December 31, 2011, the date last insured. Plaintiff's sole argument pertains to "missing medical records" allegedly not before the ALJ at the time of his decision. (Doc. 25 at 1; Doc. 28 at 2.) Specifically, Plaintiff claims his attorney failed to "present missing medical records from the time [he] was at Community Care Rehab" in March 2013. (Doc. 25 at 1; Doc. 28 at 2.) Defendant clarifies that after the administrative hearing, Plaintiff's counsel submitted an additional seven-hundred and fourteen pages of medical records and a post-hearing memorandum in advance of the ALJ's written decision. (Doc. 26 at 8-9; *see also* AR at 56-57, 346-347, 2411-3124.)

The March 14, 2018 hearing transcript provides additional context to the issue. At the outset of the hearing, the ALJ admitted Exhibits 1-A through 29-F. (AR at 31.) The ALJ inquired with Plaintiff's counsel as follows:

> ALJ: I understand from a letter that was recently submitted that there are outstanding records from a number of providers, Dr. Norati [*sic*], Dr. Fabricon [*sic*], and Dr. Iraqui [*sic*], Dr. Erdsall [*sic*], Dr. Haggerstrom [*sic*] and Golden Hill Rehabilitation Center; is that accurate?

> [Plaintiff's] ATTY: Yes, that's accurate.
>
> ALJ: What are the time periods of those records? One reason I ask is M[r]. [G] has a very remote [date last insured].
>
> [Plaintiff's] ATTY: These records I understand are from the last year. These records are going to be from after that time period.
>
> ALJ: Okay. Why don't we defer further discussion of that until the end of the hearing
>
> . . .
>
> ALJ: Would you like to make any closing remarks now, I'm certainly happy to hear them especially since there are outstanding records. Some of it's probably not going to be important given the [date last insured]. But the records from 2013, they might be. Just trying to look at it as positively as possible. If you would prefer to do a closing brief, it's up to you. It might be better. What would you like to do?
>
> [Plaintiff's] ATTY: I would like to do a closing brief.
>
> . . .
>
> ALJ: I'll be interested in the updated records and the brief . . .

(AR at 31-21, 56-57.) Post-hearing, Plaintiff's counsel submitted six letters to the ALJ regarding the status of supplementing medical records from "Dr. Mohammed Miradi, Dr. Jerry Fabrikant, Dr. Gao Er-Kai, Dr. Soumekh M. Hertzel, Dr. Lindsey Hagstorom and Golden Hill Rehabilitation Center." (*Id.* at 340-345.) Ultimately, Plaintiff supplemented seven-hundred and fourteen pages of medical records for the above-mentioned providers. (*Id.* at 56-57, 346-347, 2411-3124.) With the exception of two sets of records from Sharp Grossmont Hospital, the supplemented records post-date 2013 and none of them pertain to Community Care Rehabilitation. (*Id.* at 2411-3124.)

On June 19, 2018, Plaintiff's counsel submitted a post-hearing memorandum summarizing the position that "as of November 29, 2011, Mr. [G's] physical impairments inhibited his ability to perform any competitive work in the national economy." (*Id.* at

346-347.) The ALJ's decision includes a list of exhibits considered in connection with the decision, including Plaintiff's supplemental records. (*Id.* at 27-28, 2411-3124.)

As to the "missing" medical records from Community Care Rehabilitation from approximately March 2013, these records are not crucial to Plaintiff's claim and do not interfere with the Court's ability to effectively review his claim. *See Varney*, 846 F.2d at 583. This is because Plaintiff's disability status as of December 31, 2011 (i.e., the date last insured) is the relevant time period for making a disability assessment. *See Armstrong*, 160 F.3d at 589; *see also Bayliss*, 427 F.3d at 1217. The Community Care Rehabilitation treatment occurred fourteen months after Plaintiff's insurance coverage expired, and thus, is not crucial to Plaintiff's claim. In any event, the ALJ properly discharged his duty to develop the record—he left the record open after the hearing and there was no suggestion as to any ambiguity in the evidence or inadequacy in the record at the time of his decision. *Tonapetyan*, 242 F.3d at 1150. For the reasons discussed above, remand is not warranted on the ground that the record is incomplete. Thus, the Court can proceed with a substantive review of the ALJ's findings.

### B.   The ALJ's Decision is Supported by Substantial Evidence

The impairments at issue include Plaintiff's status-post multiple fractures of the lumbar spine transverse processes, status-post multiple rib fractures, status-post pulmonary contusions, and diabetes mellitus. (AR at 17.) The ALJ found—through Plaintiff's date last insured—Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for twelve consecutive months. (*Id.* at 17.) Therefore, the ALJ determined Plaintiff did not have any "severe" impairment. (*Id.*) In relying upon objective medical evidence, Plaintiff's lack of treatment, the opinions of nonexamining physicians and a medical expert, and Plaintiff's own hearing testimony and statements, the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's subjective allegations of impairment. (*Id.* at 17-20.) Considering all of the foregoing, the ALJ's decision is supported by substantial evidence.

///

The ALJ engages in a two-step analysis to assess the credibility of a claimant's testimony regarding subjective pain or intensity of symptoms. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal citation omitted) *superseded by regulation on other grounds*. First, the ALJ determines "whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal citation omitted). If the claimant presents such evidence to satisfy the first step, an ALJ can reject the claimant's subjective allegations of impairment "only upon (1) finding evidence of malingering, or (2) expressing specific, clear and convincing reasons for doing so." *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003); *see also Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina*, 674 F.3d at 1112). In addition to objective medical evidence, an ALJ must consider each of the factors set forth in 20 C.F.R. § 404.1529 to assess the credibility of symptoms. *Willyard v. Colvin*, 633 F. App'x 369, 370 (9th Cir. 2015).

       *i.   Plaintiff's Lack of Treatment & the Objective Medical Evidence*

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms as not entirely consistent with the objective medical evidence and other evidence in the record. (AR at 18.) The ALJ cited to the lack of ongoing or regular treatment for any residual injuries prior to the date last insured and the lack of records documenting any complaints, evaluations, or diagnostic imaging of Plaintiff's impairments prior to the date last insured. (*Id.* at 19-20.) Notably, the ALJ found Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (*Id.* at 20.) The ALJ also found the evidence in the record indicated Plaintiff's diabetes was controlled, and there was no evidence of a severe cardiovascular impairment. (*Id.* at 19-20.)

A lack of objective medical findings to support a claim of disability is a factor the ALJ may consider in discrediting a plaintiff's allegations, but it may not be the sole basis to discredit the allegations. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ is also permitted to consider a lack of treatment in assessing Plaintiff's credibility.

*Burch*, 400 F.3d at 681; *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (stating "[t]he ALJ may consider many factors in weighing a claimant's credibility, including . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . .") (internal citation and quotation marks omitted).

Here, the ALJ considered Plaintiff's testimony stating he was bedridden for nine months after the November 2011 accident, used a wheelchair, and experienced problems walking and numbness in his feet and hands. (AR at 19.) But, the ALJ also noted Plaintiff's testimony stating he did not seek treatment for such problems until 2013. (*Id.*) As to the lumbar and rib fractures, the ALJ found no evidence to show any complications that would have prolonged the one-year healing process. (*Id.*) As to ambulation, the ALJ found no evidence that Plaintiff had problems ambulating or required an assistive device for at least twelve continuous months after the November 2011 accident. (*Id.*) The only evidence the ALJ found relating to pain was an April 2012 record where Plaintiff visited the emergency room for suicidal ideation associated with chronic back and rib pain. (*Id.*) But, Plaintiff denied weakness or paresthesia and otherwise made no complaints of gait abnormality at this time. (*Id.*) Other than this emergency room visit, the first documented treatment after Plaintiff's hospital discharge from the November 2011 accident did not occur until October 2013. (*Id.*) This record documents Plaintiff's self-report stating he was on bed rest for four months and experienced a "hard recovery," but the primary complaints consisted of low back pain, diarrhea and coughing. (*Id.*) He did not complain of numbness in the hands or feet or any difficulties with walking. (*Id.*) Ultimately, the ALJ found injuries sustained from the horseback riding accident as not severe due to the lack of ongoing or regular treatment for any of the residual injuries prior to the date last insured or even in 2012. (*Id.*)

As to the cervical and lumbar spine impairments and upper and lower extremity numbness/neuropathy, the ALJ found Plaintiff's only treatment post-dated the date last insured. (*Id.* at 19-20.) The ALJ noted Plaintiff's testimony that he suffered "blackouts" due to his cervical spine impairments, but he found no medical record documenting any

complaints or treatment for the issue prior to the date last insured or even one year after. (*Id.* at 19.) Although diagnostic imaging of the cervical spine from 2015 and 2016 showed osteoarthritic changes and significant cervical stenosis with compression, the ALJ found no severe neck impairment was established prior to the December 31, 2011 date last insured. (AR at 19-20.) As to the lumbar spine, the ALJ found no documented complaints of back pain until April 2012 and no treatment or imaging of the spine until 2015, both of which are after the date last insured. (AR at 20.) And the imaging only showed mild multi-level spondylosis and a normal thoracic spine. (*Id.*) As to the numbness/neuropathy in the upper and lower extremities, the ALJ noted the treatment in 2015 and 2016 occurred well after the date last insured. (*Id.* at 19-20.) Considering all of the foregoing, the ALJ found no severe neck, back, or extremity impairments prior to the date last insured. (*Id.*)

As to the diabetes mellitus, the ALJ also found no severe impairment. (*Id.* at 19.) The record evidence indicated Plaintiff's diet was controlled as of November 2011, and otherwise did not reveal any complications or end organ damage as of the date last insured. (*Id.*)

As to cardiovascular concerns, the ALJ noted Plaintiff's denial of any hypertension, heart disease, stroke, or any other medical problems during his November 2011 hospitalization. (*Id.* at 20.) The ALJ found this consistent with the medical records and concluded Plaintiff had no severe impairment prior to the date last insured. (*Id.*)

As outlined above, it is Plaintiff's burden to prove he was disabled prior to his date last insured. *Supra* p. 6; *Armstrong*, 160 F.3d at 589. Considering Plaintiff's lack of treatment and the lack of objective medical evidence relating to his impairments as of the date last insured, the ALJ set forth specific, clear and convincing reasons for discrediting Plaintiff's subjective allegations of impairment. *Burch*, 400 F.3d at 681; *see also Tommasetti*, 533 F.3d at 1040.

  *ii. Medical Opinions*

The ALJ also considered medical opinion and medical expert evidence in accordance with applicable regulations. (AR at 18); *see also* 20 C.F.R. §§ 404.1513a(b)(2),

404.1527. This included the opinions of two nonexamining state agency medical physicians, A. Wong, M.D., and A. Alston, M.D., in addition to Dr. Kendrick's expert testimony. (AR at 35-42, 59-71, 73-81.) The ALJ found these opinions consistent with his finding of no severe impairments prior to the date last insured. (*Id.* at 18-20.)

In assessing the credibility of a claimant's symptoms, including pain, the ALJ may consider medical opinions. *See* 20 C.F.R. § 404.1529(c)(1); *see also* 20 C.F.R. § 404.1527. This includes an opinion of a nonexamining testifying medical expert. *See Morgan v. Comm'r Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (stating "[o]pinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.") (internal citation omitted). The ALJ may cite medical opinions as specific, clear and convincing reasons to reject a plaintiff's subjective allegations. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (ALJ's reliance on medical opinion is a specific reason to discredit plaintiff's subjective allegation of pain); *see also Skuja v. Colvin*, 671 F. App'x 463, 464-65 (9th Cir. 2016) (inconsistencies between claimant's symptom testimony and opinions of medical examiners is a clear and convincing reason to discredit claimant's subjective allegations).

On initial review, Dr. Wong noted the lack of records available near in time to Plaintiff's date last insured. (AR at 66.) Dr. Wong found Plaintiff only partially credible and opined Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms as not substantiated by the medical evidence alone. (*Id.* at 67-68.) Upon reconsideration, Dr. Alston found Plaintiff has one or more medically determinable impairments but found the impairments non-severe based upon the insufficient medical evidence to evaluate the claim. (*Id.* at 80.) At the administrative hearing, Dr. Kendrick testified based upon his review of the record and opined that Plaintiff's rib fractures and lumbar transverse process fractures would have healed within one year of the accident. (*Id.* at 19-20, 35, 37, 39.) As to Plaintiff's diabetes, Dr. Kendrick noted the impairment existed at the time of the November 2011 accident but he found Plaintiff experienced no complications prior to December 31, 2011 or even one year after. (*Id.* at 37-38.) Similarly,

Dr. Kendrick testified that there was evidence of degenerative disc disease, but he found no medical evidence that it existed at the time of the initial injury. (*Id.* at 38-40.)

The ALJ properly cited to specific evidence in the record, including the medical opinions and expert testimony outlined above, as specific, clear, and convincing reasons for discrediting Plaintiff's subjective allegations of impairment. 20 C.F.R. § 404.1529; *Morgan*, 169 F.3d at 600; *Moncada*, 60 F.3d at 524; *Skuja*, 671 F. App'x at 464-65.

        iii.     *Plaintiff's Testimony*

Notably, the ALJ found several of Plaintiff's statements as not entirely consistent with the objective medical evidence and other evidence in the record. (AR at 18.)

An ALJ may discredit subjective allegations of impairment by identifying "what testimony is not credible and what evidence undermines [that testimony]." *See, e.g., Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal citation and quotation marks omitted); *see Robinson v. Berryhill*, 690 F. App'x 520, 525 (9th Cir. 2017) (upholding ALJ's determination finding claimant's "inconsistent statements . . . hurt his credibility."). The ALJ may consider many factors in weighing a claimant's credibility including his prior work record and statements about his symptoms. *See* 20 C.F.R. § 404.1529(c)(3); *see also Tommasetti*, 533 F.3d at 1039 (internal citation omitted); *Jourdan v. Comm'r Soc. Sec.*, 426 F. App'x 499, 500 (9th Cir. 2011) (ten-year work history following accident and conservative treatment of symptoms constituted substantial evidence to support ALJ's adverse credibility determination).

As noted above, Plaintiff testified that after the accident, he was bedridden for nine months and experienced problems with ambulation. *Supra* p. 10; (AR at 48.) However, he testified he did not seek treatment until 2013 for these symptoms. (AR at 47-48.) The ALJ cited this delay in treatment as a basis to reject Plaintiff's allegations. (AR at 18-20); *Burch*, 400 F.3d at 681; *Tommasetti*, 533 F.3d at 1040. The ALJ also cited to a medical record from January 2016 where Plaintiff reported to be "[f]unctioning well on a daily basis" which further undermined Plaintiff's credibility. (AR at 20 (citing AR at 2047).) The ALJ also considered Plaintiff's testimony about his prior work record including: (1)

Plaintiff stopped working in 2006 because he was laid off; (2) Plaintiff withdrew money from his 401K plan to open up his own shop; (3) and Plaintiff needed to generate income after the November 2011 accident so in the end of 2012 Plaintiff "started doing little jobs for friends just trying to get money to eat." 20 C.F.R. § 404.1529(c)(3); (AR at 19-20, 47-48). Considering all of the foregoing, the ALJ properly identified evidence which undermined Plaintiff's allegations of impairment. *Berry*, 622 F.3d at 1234. In doing so, the ALJ offered specific, clear and convincing reasons for rejecting Plaintiff's subjective allegations of impairment.

In sum, the undersigned finds an effective review of Plaintiff's claim can be made on the current record as the relevant time period for assessing Plaintiff's disability is from the alleged onset date to the date last insured. In reviewing the parties' papers, the record, the facts, and the applicable law, the undersigned finds the ALJ's decision finding Plaintiff not disabled as of the date last insured is supported by substantial evidence.

## VII. **CONCLUSION**

For the reasons given, the undersigned respectfully recommends that Plaintiff's Motion be **DENIED** and the ALJ's decision be **AFFIRMED**.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Any party may file written objections with the Court and serve a copy on all parties on or before **September 10, 2020**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **October 1, 2020**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

**IT IS SO ORDERED**.

///

///

///

15

19-cv-01603-CAB-RBM

DATE: August 19, 2020

*[signature: Ruth Bermudez Montenegro]*
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE